No. 82-329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRUCE A. DESILVA,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Carter,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas E. Richardson argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Margaret M. Joyce Johnson argued, Asst. Atty. General
Richard O. Harkins, County Attorney, Ekalaka, Montana

Submitted: October 24, 1983

Decided: April 9, 1934

Filed: APR 9 - 1984

*Ethel M. Harrison*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant, Bruce de Silva, appeals from a Carter County District Court judgment entered on a jury verdict finding him guilty of the felony of issuing a bad check. He was sentenced to ten years in prison, five years suspended on the condition that he refrain from selling or buying livestock in Montana, and prohibiting him from maintaining a checking account. We affirm.

Although not so set forth in his brief, defendant raises five issues. First, he claims that the evidence was insufficient to support a jury finding that he knew, at the time of issuing the checks, that they would not be honored by the bank. Second, he claims that the jury instructions defining the elements of the offense were inconsistent and that the jury may therefore have found defendant guilty by use of less than a reasonable doubt standard. Third, he claims that the trial court improperly refused his instructions on his defense that the person to whom he had written the checks had impliedly consented to accepting a check that may not be backed up by sufficient funds. Fourth, he claims that the State made prejudicial remarks during its opening statement that destroyed his credibility because the jury could infer that the State had even more damaging evidence that the court would not let the State introduce into evidence. Fifth and finally, he argues that the sentence was excessive and that the trial court impermissibly set the sentence to set an example for others who may be inclined to take advantage of Montana stockgrowers in similar situations.

On September 26, 1980, defendant, an Iowa livestock broker, purchased approximately 530 sheep from Delbert Dinstel, an eastern Montana rancher. The defendant had already made arrangements to sell half the sheep to Richard Clark in Missouri, and the defendant received $14,860 in advance for payment. Defendant testified that he believed he had a commitment from a farmer in Michigan to buy the other truckload. In contrast, Dinstel testified that before defendant arrived to pick up the sheep, defendant told Dinstel that the Michigan farmer backed out of the sale.

The defendant gave the sheep rancher two checks for the sheep, each check representing one truckload. The two checks were in the amount of $13,456 and $14,250. They were drawn on an Iowa bank account opened just the day before, September 25, 1980. The advance payment that the defendant received would have been sufficient to cover either of the two checks but not both. However, both checks were twice returned to the rancher because of insufficient funds. After the checks were returned, the rancher called the defendant, and the defendant promised to send a cashier's check to cover the two returned checks. The cashier's check was never sent.

In October 1980, the rancher went to Iowa to confront the defendant, and found 120 sheep still in the defendant's possession. At the rancher's insistence, the sheep were sold and $5,160 received in the sale of the sheep was given to the rancher. The defendant then offered the rancher $3,000 and a promissory note for the balance of approximately $23,000, but the rancher refused the offer.

Criminal charges were filed in Carter County on October 21, 1980, alleging violation of section 45-6-316, MCA, our statute making it a felony to issue a bad check. The statute

- 3 -

requires that the person issuing the check know, at the time of issue, that the check will not be paid by the bank. Also, failure to pay the check within 5 days of notice that the check has not been paid, is prima facie evidence that the person knew, at the time of issue, that the check would not be paid. Section 45-6-316, MCA.

Defendant first contends that the evidence was insufficient to convict him of the felony of issuing a bad check. Defendant argues that he believed the checks would be paid by the bank and that the State did not prove that he knew, at the time of issuing the check, that it would not be honored by the bank. The evidence supports the verdict.

To convict the defendant, the jury was required by Instruction 2 to find that defendant knew, at the time of writing the check, that it would not be paid by the bank. By Instruction 3, the jury was further required to find that defendant had no arrangement or understanding with the bank to pay the checks when presented, nor sufficient funds to pay the checks.

The evidence shows that the defendant opened the checking account using the advance payment from Clark, but he made no other deposits. The evidence also shows that defendant had no firm commitment to sell the second load of sheep and that he had no other potential buyers. Despite this situation, the defendant continued to write checks on the new Iowa account. Accordingly, when defendant's checks to Dinstel arrived at the Iowa bank for payment, defendant's account had insufficient funds to pay them. The bank, therefore, returned the checks to Dinstel - unpaid. Clearly this evidence is sufficient to support the jury's verdict.

- 4 -

Defendant next contends that the instructions defining the elements of the offense (Instructions 2 and 3) are in conflict, and that if the jury followed Instruction 2 only, it could have found him guilty by use of less than a reasonable doubt standard. Instruction 2, offered by the State, sets forth the elements of the offense as contained in section 45-6-316, MCA. Instruction 3, offered by defendant, does the same, but also incorporates certain facts of the case and tells the jury that it must find the defendant guilty beyond a reasonable doubt. Defendant contends that the jury may have followed Instruction 2 and not 3, and therefore that the jury may have convicted defendant by using less than a reasonable doubt standard, and therefore that the jury could have convicted him even if the jury had a reasonable doubt of his guilt.

Instructions 2 and 3, however, are not inconsistent, although Instruction 3 elaborates on the statute defining the offense by reciting some facts of the case and by telling the jury that it cannot convict unless it finds defendant guilty beyond a reasonable doubt. If only Instruction 3 contained the reasonable doubt standard, defendant's position would be more plausible. However, the jury was fully informed by other instructions (Instructions 4 and 4A) that before it could find defendant guilty, it must believe that he was guilty beyond a reasonable doubt. Instruction 4 directed the jury to acquit defendant if it was not satisfied of defendant's guilt beyond a reasonable doubt, and Instruction 4A defined what is meant by reasonable doubt. The jury was properly and fairly instructed on the elements of the offense and on the burden faced by the State in order to convict.

- 5 -

Defendant also contends that the trial court improperly refused his instructions relating to the defense of consent as contained in section 45-2-211, MCA. This statute, contained in the general liability part of our criminal code, provides that: "The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense." Defendant relied on consent as a defense. Defendant testified that he told Dinstel that both checks would not clear until the second load of sheep had been sold, and therefore Dinstel had consented to taking checks that he knew would not or at least might not be paid. Dinstel, however, testified that he accepted the checks thinking they were immediately payable and he testified that he would not have sold the sheep to defendant if he knew the bank would not immediately pay the checks.

Based on his version that Dinstel knew the checks would not clear, defendant offered an instruction (defendant's refused Instruction 4), which stated in essence that to sustain a conviction the evidence must show beyond a reasonable doubt that at the time Dinstel accepted the check, he had no knowledge that the checks would not be immediately paid. The court refused this instruction, but did instruct the jury (Instruction 12) that "under Montana law the consent of the victim is a defense to a criminal charge." This instruction properly reflects section 45-2-211, MCA, which provides that consent of the victim is a defense.

Although defendant's refused Instruction 4 refers solely to the question of Dinstel's consent when he accepted the checks, the jury did receive similar instructions in Instruction 3. The pertinent part of that Instruction states that in order to find defendant guilty, the State must prove

- 6 -

beyond a reasonable doubt that Dinstel received the checks without knowing they would not be paid by the bank upon presentment. De Silva had only to raise a reasonable doubt regarding Dinstel's consent when he accepted the checks; the State had the burden of proof beyond a reasonable doubt that Dinstel did not consent. There was contradictory testimony regarding Dinstel's consent to accepting and holding a check not immediately payable, and the jury found that Dinstel did not consent in that he did not knowingly accept the checks with the knowledge they might not clear. The jury was sufficiently instructed on the State's burden of proof on the issue of consent, and we find no error in refusing defendant's offered instructions.

The defendant next contends that the State made a prejudicial remark in its opening statement that destroyed his credibility with the jury. The State's prosecutor made the following statement to the jury which we find a little confused:

> "I believe we will also be presenting evidence concerning peripheral issues. Now, some of the evidence that I was going to present has been excluded. The Judge and the defense counsel may make objections to some of the statements made by counsel. If that occurs I want you to disregard any of the information said by a witness inadvertently. I have told my witnesses and I don't think any of this information will come in. It has nothing to do with the case before us."

Defense counsel focuses only on the underlined sentence, and argues that this remark destroyed defendant's credibility, so that the jury did not believe defendant or his explanation. When read in context, we do not believe the comment destroyed defendant's credibility.

Finally, the defendant contends that he was improperly sentenced because he was sentenced to set an example. The

offense of issuing a bad check carries with it a maximum $50,000 fine, a maximum ten year prison term, or both, section 45-6-316, MCA. The trial court imposed the statutory maximum prison term, but suspended five years with conditions imposed. The sentence was based on the presentence report that revealed the defendant's history of bad checks and bankruptcy, and his law enforcement background. The report revealed that the defendant had a history of arrests without conviction for bad checks within the past two or three years in Iowa, and that the defendant filed for bankruptcy in Iowa on September 20, 1980, six days before he wrote the two bad checks to Mr. Dinstel. The report revealed that when the defendant filed for bankruptcy, eleven debts for livestock purchases were listed, totalling over $64,000. Since the time the defendant filed for bankruptcy and wrote the two bad checks to Dinstel, the defendant wrote 7 additional bad checks on 4 different banks in Iowa for livestock purchases totalling over $49,000. The defendant's history in law enforcement indicated he had been a deputy sheriff in one county in Iowa and Chief of Police in two different towns in Iowa.

Although the trial court did mention "setting an example" when imposing the sentence, when viewed in context, it is not sufficient reason to remand for resentencing. The purposes of any law setting punishment for a crime are prevention and reformation. Article II, § 28, Mont.Const. The trial court gave sufficient reasons for its sentence, and we find no impropriety in the manner of sentencing.

The judgment of the District Court is affirmed.

_____
Justice

- 8 -

We Concur:

_____
        Chief Justice

_____

_____

_____

_____

_____
               Justices